UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24132-CV-GAYLES/MCALILEY

JET MIAMI LLC,

      Plaintiff,

vs.

MIAMI JET INC. and GREGORY
HERMANS,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Court has before it the Defendants' Motion for Summary Judgment, (ECF No.

57). The Motion has been fully-briefed, (ECF Nos. 62, 71), and the Honorable Darrin P.

Gayles has referred this Motion to me for a report and recommendation, (ECF No. 80).

After careful review of the parties' legal memoranda, the record, and the applicable

law, for the reasons that follow I RECOMMEND that the Court GRANT Defendants'

Motion for Summary Judgment, (ECF No. 57).

I.      BACKGROUND

Plaintiff Jet Miami LLC initiated this lawsuit when it filed claims against Defendants Miami Jet Inc. and Gregory Hermans, the principal of the Defendant corporation, alleging generally that Defendants' "MIAMIJET" trademark infringes upon Plaintiff's "JETMIAMI" trademark. (ECF No. 56).

Plaintiff uses its JETMIAMI trademark in connection with its aircraft charter brokerage, consulting aviation, and aircraft management services, which services are based in the Miami area. (*Id.* at ¶ 9; ECF No. 62 at p. 11). Defendants also provide aviation services, specifically aircraft brokerage services and retail services through direct solicitation by salespersons directed to end-users featuring aircraft, (*Id.*at ¶ 22). Plaintiff was the first to use its mark, that is, in August 2015. (ECF No. 57-1 at ¶ 6; 57-5 at No. 2). Not long after, in October 2016, Defendants began operating under the name Miami Jet Inc. (ECF No. 56 at ¶ 29) and they began using the MIAMIJET trademark in commerce no later than December 2016. (ECF No. 57-1 at ¶ 90).

On November 10, 2016, Defendants filed an application to register their trademark with the United States Patent and Trademark Office ("PTO"), and the PTO issued a registration for that mark on July 25, 2017. (ECF No. 57-41). Just one month following Defendants' application, on December 14, 2016, Plaintiff also filed for trademark registration with the PTO. (ECF No. 57-1 at ¶ 3). The PTO denied that application because Plaintiff's proposed trademark was "primarily geographically descriptive of the origin of

the applicant's services." (ECF No. 57-4 at 19).[1]

On November 9, 2017, Plaintiff initiated this action. Plaintiff's Second Amended Complaint ("SAC") includes claims against both Defendants for (1) unfair competition pursuant to the Lanham Act; (2) common law trademark infringement; (3) common law unfair competition; and (4) unjust enrichment. (ECF No. 56).

After the filing of this lawsuit, on April 11, 2018, Plaintiff filed an application with the state of Florida, for trademark registration of its stylized mark, which "consists of the words JETMIAMI with the word JET in blue letters and MIAMI in gray letters." (ECF No. 62-1 at ¶ 101; ECF No. 56-10). The state registration was issued that same day. (ECF No. 56-10 at 2; ECF No. 57-8 at 2).[2]

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment on all of Plaintiff's claims. (ECF No. 57). As for the first three claims, which allege trademark violations pursuant to the Lanham Act and the common law, Defendants urge they are entitled to summary judgment because Plaintiff's tradename JETMIAMI is not eligible for protection because it is a merely descriptive mark that lacks any secondary meaning. (*Id.* at 7-8). This being so, Plaintiff's

---

[1] The apparent inconsistency of the PTO's determinations is not significant here. The PTO's decisions turn on a variety of factors beyond the text of the proposed trademarks themselves. The Court does not have a full record of both Plaintiff's and Defendants' applications, and the validity of Defendants' trademark registration is not before the Court. The Court, here, is concerned only with Plaintiff's right to protection of its trademark.

[2] Although the Court struck Plaintiff's allegation and exhibit related to its state trademark registration, (ECF No. 83), it nonetheless addresses this evidence in Section II (B)(1).

unjust enrichment claim, Defendants argue, necessary fails. (*Id.* at 22).

Plaintiff responds that its JETMIAMI mark is at least suggestive, and may even be arbitrary or fanciful, and that it is thus eligible for trademark protection. (ECF No. 62 at 6-14). Plaintiff also argues, in the alternative, that even if the mark is merely descriptive, it has achieved secondary meaning, so as to warrant trademark protection, or, that material issues of fact preclude summary judgment on its claims. (*Id*. at 14-21).

A.    Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must provide more than a "mere scintilla of evidence." *Fedolfi v. Banyan Air Services, Inc.*, 258 F. App'x 274, 276 (11th Cir. 2007) (citations omitted). It must make "enough of a showing that the jury could reasonably find for that party." *Gillard v. Dep't. of Corrections*, 500 F. App'x 860, 863 (11th Cir. 2012) (citation omitted). In evaluating a motion for summary judgment, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the nonmoving party. *See Sada v. City of Altamonte Springs*, 434 F. App'x 845, 847 (11th Cir. 2011). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Id*. (citation omitted).

       B.       <u>Unfair Competition and Trademark Infringement Claims</u>

"The elements of common law and statutory trademark infringement are the same." *See Tally–Ho, Inc. v. Coast Community College District,* 889 F.2d 1018, 1025–26 (11th Cir. 1990). Likewise, the legal standard for unfair competition is the same as that for trademark infringement under both the Lanham Act and common law. *See Knights Armament Co. v. Optical Sys. Tech., Inc.,* 568 F. Supp. 2d 1369, 1376 (M.D. Fla. 2008). Thus, this analysis is dispositive of the first three counts of Plaintiff's Second Amended Complaint, which allege unfair competition under the Lanham Act, common law trademark infringement, and common law unfair competition.

To prevail on these claims a claimant must show "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001).

Defendants' argument for summary judgment is aimed at the first element of these claims: they argue Plaintiff did not have prior rights to the JETMIAMI mark. (ECF No. 57 at 8). Accordingly, neither party addressed the second element, likelihood of confusion.

       1.       <u>Distinctiveness of the Mark</u>

To establish the first element, Plaintiff need not show that it has a registered trademark. *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). Plaintiff must show, however, that its common law, unregistered mark is sufficiently distinctive (that is, the mark is capable of distinguishing Plaintiff's services from that of others) to be eligible for

protection. *Id.* The Eleventh Circuit recognizes four categories of distinctiveness, listed here in ascending order of strength: (1) generic marks, which "suggest the basic nature of the product or service"; (2) descriptive marks, which "identify the characteristic or quality of a product or service"; (3) suggestive marks, which "suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive"; and (4) arbitrary or fanciful marks, which "bear no relationship to the product or service." *Id.* at 774.

The last two categories, suggestive and arbitrary or fanciful marks, are "inherently distinctive because their intrinsic nature serves to identify a particular source of a product" and are thus generally entitled to trademark protection. *Id.* (citation omitted).  At the other end of the spectrum, generic marks are generally incapable of receiving trademark protection. *Id.* The same is true for merely descriptive terms because they do not advise the buyer that the product comes from a single source and because trademark protection would infringe on common speech." *Educ. Dev. Corp. v. Econ. Co.*, 562 F.2d 26, 28 (10th Cir. 1977). Importantly, however, "[d]escriptive marks, though not inherently distinctive, may become sufficiently distinctive to enjoy trademark protection by acquiring 'secondary meaning.'" *Tana,* 611 F.3d at 774 (citations omitted).

Defendants contend that Plaintiff's mark is merely descriptive, and in particular, that it is geographically descriptive. (ECF No. 57 at 7-12). Plaintiff responds that the mark is at least suggestive, and potentially even arbitrary and fanciful. (ECF No. 62 at 6-14).

A good place to start this analysis is to review the PTO's finding, that the mark is "primarily geographically descriptive", when it rejected of the Plaintiff's trademark

6

application. (ECF No. 57-4 at 18). Although the PTO's determination does not bind the

Court, courts recognize the PTO's specialized expertise and experience in evaluating

trademark distinctiveness, and the PTO's assessment is an important factor to consider in

determining the distinctiveness of the mark.[3]

In its review of Plaintiff's application, the PTO stated that "a mark is primarily

geographically descriptive when the following is demonstrated:

(1)     The primary significance of the mark is a generally known geographic
place or location;

(2)     The goods and/or services for which applicant seeks registration
originate in the geographic place identified in the mark; and

(3)     Purchasers would be likely to make a goods-place or services-place
association; that is, purchasers would be likely to believe that the goods
and/or services originate in the geographic place identified in the mark."

*See* (ECF No. 57-4 at 19); *accord In re Societe Generale des Eaux Minerales de Vittel S.A.*,

824 F.2d 957, 959 (Fed. Cir. 1987). Following this, the PTO noted that Plaintiff's mark is

composed of the words Jet and Miami, that Miami is a known geographic location, and

that Plaintiff was offering aircraft related services from an address in Miami and concluded

---

[3] *Investacorp*, 931 F.2d at 1524 (courts "will bestow proper respect to the determinations of the
PTO"); *GamerModz, LLC v. Golubev,* Case No. 10–cv–1466, 2011 WL 4755026, at *11 (M.D.
Fla. Aug. 3, 2011)(the PTO's determination "is an important factor to consider in light of [its]
specialized expertise."); *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F. Supp. 326, 333 (N.D.
Ga. 1967) ("While the various Patent Office decisions referred to are not binding upon this court,
they are certainly entitled to the most respectful consideration because of the Patent Office's day-
to-day expertise in adjudicating cases. . . .").

that Plaintiff's proposed mark was primarily geographically descriptive of the origin of Plaintiff's services. (ECF No. 57-4 at 18-19). The PTO's reasoning here, is very persuasive.

Courts engage in a number of other considerations when they evaluate the distinctiveness of a trademark. Often, they start with the dictionary definitions of the terms that comprise the mark to determine the ordinary significance and meaning of words to the public. *Engineered Tax Services, Inc. v. Scarpello Consulting, Inc*., Case No. 16-81795, 2018 WL 3899223, *3 (S.D. Fla. July 31, 2018) (citation and quotation marks omitted). Another test, used to determine whether marks are descriptive or suggestive, is the imagination test, "which seeks to measure the relationship between the actual words of the mark and the product to which they are applied." *Id*. at *4 (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc*., 851 F.3d 440, 452 (5th Cir. 2017)). This test asks whether a "customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination." *Investacorp*, 931 F.2d at 1524. Another test asks, "whether competitors would be likely to need the terms used in the trademark in describing their products." *Vision Ctr. v.Opticks, Inc.*, 596 F.2d 111, 116 (5th Cir. 1979) (citation omitted).[4] Courts also consider third-party use of the mark as probative evidence of descriptiveness. *Gift of Learning Found., Inc. v. TGC, Inc*., 329 F.3d 792, 799 (11th Cir. 2003) ("[T]he evidence of various competitions being held around the country using

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit entered before October 1, 1981.

variations of the terms drive, pitch, and putt . . . indicates that the use of these terms in connection with golf skills challenges is not a particularly innovative idea.").

Applying these tests, the Court concludes that significant probative evidence in the record demonstrates that the mark JETMIAMI is descriptive.

To begin, Merriam-Webster defines "jet" as "an airplane powered by one or more jet engines." Jet, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/jet (last visited Aug. 21, 2019). Miami is noted as a geographical name, rather than a particular part of speech (i.e., noun or verb), and is defined as a "city and port on Biscayne Bay in southeastern Florida." Miami, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/jet (last visited Aug. 21, 2019).

Turning to the imagination test, and considering the relationship between the words "jet" and "Miami", and Plaintiff's services, in the minds of prospective customers, the Court finds that a customer need not employ his imagination to perceive that JETMIAMI denotes a company that provides aviation services in the Miami area. To be considered merely descriptive, a mark need only convey an important aspect of a company's product or services, and need not convey all required elements. *Engineered Tax Services, Inc.*, 2018 WL 3899223 at *5, citing *Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1116 (9th Cir. 2010); *see, e.g. Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 216 and n.15 (2d Cir. 1985) (finding tradename "Sportscreme" descriptive of "a creme useful in connection with sports" despite the fact that the product did not convey "any thought (by way of description of suggestion) as to the significance of the product—i.e., whether it is useful to relieve dryness, itchiness, odor or pain"). Here, Plaintiff's mark conveys

9

important characteristics of its services, that is, aviation services, and its geographic location, and this plainly is descriptive.

The Court also finds that competitors would likely need to use the words "jet" and "Miami" in connection with their businesses. Greater Miami is a large metropolitan area with a substantial aviation industry and services. Few words can substitute for jet, which is a specific type of airplane, *see* Jet, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/jet (last visited Aug. 21, 2019), and Miami is a specific geographic location. This too, supports the descriptive nature of the mark.

Defendant has also introduced evidence of the popularity of use of the terms, by actual competitors and others providing similar services. This includes evidence of two other companies, both in operation before Plaintiff, whose tradenames contain both the words "jet" and "Miami," and eight additional competitors who offer aviation-related services and whose tradenames utilize one of the words that compose Plaintiff's tradename. (ECF No. 57-1 at ¶¶ 78-87 and supporting documents). The popularity of actual use of these terms is further indication that the mark is descriptive. *See, e.g., Investacorp, Inc.,* 931 F.2d at 1523  ("Moreover, the popularity of actual use of the two key formatives also indicates that the mark is descriptive.")

Plaintiff argues in its Response that its "novel" arrangement and combination of the words "jet" and "Miami" renders the mark arbitrary or fanciful, because it creates a "'non-word' that is not descriptive of either the location or the nature of Plaintiff's services" and "gives a unique impression to an ordinary consumer separate from the services offered by

Plaintiff. (ECF No. 62 at 10-11).[5] This argument fails. First, a mark that combines two descriptive terms retains the descriptive quality of those component terms. *Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 488 (7th Cir. 1982) ("[I]f the components of a trade name are common descriptive terms, a combination of such terms retains that quality."). Moreover, the tradename JETMIAMI is not sufficiently distinguishable from its component terms to warrant consideration as a completely fanciful term not found in the English language. *See Vokal, Inc. v. Nelly*, Case No. 6:04-254 ORL 31DA, 2005 WL 2304965, *4 (M.D. Fla. Sept. 21, 2005) ("The fact that the Vokal, Inc. mark is spelled differently than the widely understood term 'vocal' does not make it a suggestive or arbitrary mark. 'Vokal' is insufficiently distinguishable from 'vocal' to warrant categorization as a stronger mark." *(citing Standard Paint Co. v. Trinidad Asphalt Mfg. Co.,* 220 U.S. 446, 458, (1911). Plaintiff's effort to characterize the mark as arbitrary or fanciful is entirely unpersuasive.

Finally, Plaintiff also argues that its successful registration of the mark with the State of Florida creates an issue of fact whether the mark is suggestive, because that registration suggests the State of Florida found the mark to be at least suggestive. (ECF No. 62 at 12-13, 21-22). By separate order, the Court struck Plaintiff's allegation and exhibit regarding the state trademark registration, (ECF No. 83), but nonetheless addresses Plaintiff's argument to explain why this evidence would not allow Plaintiff to avoid

---

[5] This argument stands in contrast to Plaintiff's assertion, in the Second Amended Complaint, that its trademark gained distinctiveness by being suggestive or by the acquisition of secondary meaning. (ECF No. 56 at ¶ 19).

summary judgment. To start, state registration of a mark is not afforded the same presumption as federal registration. *Vokal, Inc.*, 2005 WL 2304965, at \*4, *aff'd*, 181 F. App'x 960 (11th Cir. 2006) ("Vokal, Inc. holds a Florida registration, not a federal one, and Vokal, Inc. has not even attempted to show that a registration under Florida law is accorded the same weight [as USPTO registration]. The Court's research has uncovered no support for this proposition, which runs counter to the apparently minimal evidentiary effect given to the mere fact of registration under Florida law."). In addition, any inference that might be drawn that the State considered Plaintiff's mark to be suggestive, is definitively rebutted by the PTO's denial of Plaintiff's federal application and its express finding that the mark is geographically descriptive. Last, Plaintiff's state registration is specific to Plaintiff's stylized mark (JETMIAMI with the word JET in blue letters and MIAMI in gray letters) (ECF No. 57-8, Plaintiff's State Trademark Registration), whereas the allegations of the Second Amended Complaint address the JETMIAIM trademark. [6]

---

[6] The Court also notes the following facts which further indicate that Plaintiff's application for State registration of its trademark is not entitled to a presumption of distinctiveness. First, the application was granted the day it was filed, which does not suggest an in-depth review. Also, the "Disclaimer Statement" section of the application states: "Your mark may include a word or design that is commonly used by others. Commonly used terms or designs must be disclaimed. When you disclaim a specific term or design, you are acknowledging this term is commonly used by others and that you do not claim the exclusive right to use the disclaimed term or design. All geographical terms and representations of cities, states or countries must be disclaimed (i.e., Miami, Orlando, Florida, the design of the state of Florida, the design of the United States of America, etc.). Corporate suffixes and terms readily associated with specific product(s) and or service(s) being provided must also be disclaimed." (ECF No. 56-10 at 5). The applicant is instructed to "[e]nter all terms [in the mark being registered] which require a disclaimer." (*Id.*). While this instruction certainly seems to call for Plaintiff to disclaim the term "Miami", and possibly even Jet, Plaintiff left this section of the application blank. (*Id.*).

In sum, the undisputed record evidence supports the finding that Plaintiff's mark is descriptive.

### 2. The Record does not Support a Finding that the Mark has Acquired Secondary Meaning

A descriptive mark is entitled to trademark protection only if it has acquired secondary meaning. *See Investacorp,* 931 F.2d at 1522. "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1358 (11th Cir. 2007) (quotation marks, citation, and alteration omitted). Plaintiffs can establish secondary meaning through consumer survey evidence. *See Investacorp,* 931 F.2d at 1525. Absent survey evidence, courts consider four factors in weighing whether a mark has attained secondary meaning: (1) the length and nature of the name's use, (2) the nature and extent of advertising and promotion of the name, (3) the efforts of the proprietor to promote a conscious connection between the name and the business, and (4) the degree of actual recognition by the public that the name designates the proprietor's product or service." *Welding Servs.,* 509 F.3d at 1358 (citation omitted). Importantly, a plaintiff "has the burden of sustaining *a high degree of proof* in establishing a secondary meaning for a descriptive term" and courts "*must consider* this burden when ruling on a motion of summary judgment." *Investacorp,* 931 F.2d at 1525 (emphasis added); *see also Gift of Learning Foundation,* 329 F.3d at 800. In addition, Plaintiff must establish that the mark attained secondary meaning *before* Defendants adopted their allegedly infringing mark (which occurred no later than December 2016). *Investacorp,* 931 F.2d at 1524.

Plaintiff claims to have introduced "myriad competent evidence to support a finding of secondary meaning." (ECF No. 62 at 15). The Court disagrees. In fact, there is insufficient competent evidence to support Plaintiff's claim of secondary meaning.

Plaintiff claims that it first used the JETMIAMI mark in commerce on August 11, 2015. (ECF No. 62-1 at ¶ 102). Defendants first began using their trademark in commerce in December 2016. Therefore, at best, Plaintiff used the mark for 16 months before Defendants' adoption of their own trademark. While it certainly is possible for secondary meaning to be forged in a short period of time based on the strength of other factors, it is also true that courts have found an absence of secondary meaning, even after many years of use, where the showing made as to the other three factors was weak. *See Investacorp*, 931 F.3d at 1525 (upholding finding of no secondary meaning after five years of use); *EL Holdings Lake City, LLC v. Lake City RV Resort, LLC*, No. 4:15CV523-RH/CAS, 2016 WL 10637091, at *2 (N.D. Fla. Aug. 3, 2016) ("That the mark had been in use for ten years does not, without more, suggest that the mark had acquired secondary meaning.")*; Vision Ctr.*, 596 F.2d at 119 & n.22 (finding no secondary meaning after 20 years of use and no media advertising for most of that time).

The Court turns next to the second factor: the nature and extent of Plaintiff's advertising and promotion of the mark. Plaintiff asserts that "it has advertised, promoted and/or marketed itself and its JETMIAMI mark in a variety of ways, including through dissemination of brochures, flyers, branded merchandise, business cards and e-mail blasts, use of the mark on its website, placements in Controller magazine, Controller.com and other trade publications, attendance at trade shows, signature blocks on the emails received

14

from its representatives, through direct marketing, and through other means, including social media." (ECF No. 62-1 at ¶ 106). Plaintiff, however, has almost completely failed to produce proof of any of its claimed promotion efforts, or any information that could be used to determine the scope and impact of these efforts.[7]

For example, Plaintiff asserts that it promoted the mark through attendance at trade shows, but admits that it did not purchase a booth to exhibit the company at any trade show. Rather, Plaintiff simply attended the annual National Business Aviation Association ("NBAA") trade show and while there promoted the mark "on business cards, shirts, and other marketing materials." (ECF No. 62-1 at ¶ 53). Plaintiff does not provide any more specifics about this promotion.  Plaintiff also asserts that it advertised in Controller magazine and on Controller.com, which it describes as an "important industry reference," but Plaintiffs admits that at least some of those advertisements were posted under the name "Jet Miami," that is, with a space between the words, which is not the trademark in dispute. (ECF No. 62-1 at ¶¶ 137-38). Plaintiff points generally to its social media promotion, yet admits that its Instagram account is private and has only eight followers. (ECF No. 62-1 at ¶ 59). Plaintiff's proof hardly suggests their advertising and promotional efforts would make "major inroads to the consumer psyche," or even reach consumers at all. *Investacorp*, 931 F.2d at 1526.

---

[7] *See Engineered Tax Services, Inc.,* 2018 WL 3899223, at *11 ("Plaintiff has not placed samples of these e-mails or any evidence of the extent of the e-mail campaign in the record, and there is no information on the nature and extent of its business development efforts and their effectiveness in promoting the mark. Without more detailed information, the Court cannot determine whether Plaintiff's advertising campaigns made major inroads to the consumer psyche." (quotation and citation omitted)).

The third and fourth factors the Court weighs to determine whether a mark has established secondary meaning, are the efforts made to promote a conscious connection between the name and the business, and the degree of actual recognition by the public. Again, Plaintiff's purported evidence is likewise scant and indefinite. Plaintiff reports that it spent $60,000 advertising the JETMIAMI mark over the three-year period between August 2015 and August 2018. (ECF No. 62 at 17). Because Defendants' use of its mark began in December 2016, however, the Court is concerned only with the period from August 2015 through December 2016, and Plaintiff has not identified evidence of how much of this money was spent in that period, or how it was spent. Plaintiff acknowledges that the $60,000 sum is not especially large, but asserts that "the question is not the extent of the promotional efforts, but their effectiveness in altering the meaning of [the word] to the consuming public." (ECF No. 62 at 17, quoting *FN Herstal SA v. Clyde Armory Inc.,* 838 F.3d 1071 (11th Cir. 2016)). Without evidence of Plaintiff's actual advertising, or other information about how it spent its advertising funds, the Court has little to rely on to assess the effectiveness of Plaintiff's efforts.

Plaintiff also states that it earned $5,400,000.00 over the three-year period between August 2015 and August 2018. But, again, Plaintiff does not provide documentary proof of this, or any breakdown of that number – not even an indication whether those earnings are gross or net. Plaintiff states that it has sold four airplanes in its three years in operation. (ECF No. 62-1 at ¶115), which could conceivably account for a very substantial portion of those earnings. Finally, Plaintiff admits that during its three years in operation, it has served only twenty clients across all of its services. (ECF No. 62-1 at 112). Even limited to

16

Plaintiff's target audience of high net worth individuals, (ECF No. 62 at 18), this small number does not establish a connection in the mind of that audience between Plaintiff's mark and its business. And once again, on this record, the Court does not know whether any of those clients were clients of Plaintiff's before Defendants' adoption of the mark, which is the date by which Plaintiff must establish it had attained secondary meaning. *See Investacorp*, 931 F.2d at 1524. In sum, Plaintiff has failed to provide specific evidence of effective advertising and promotion efforts that have resulted in any degree of actual recognition in the mind of the public. Plaintiff falls short of the "high degree of proof" it must put forward, to establish that its mark acquired distinctiveness through secondary meaning during the relevant time period.

Plaintiff also argues that even if it cannot establish secondary meaning pursuant to the four factors analyzed above, the Defendant's bad faith in intentionally copying Plaintiff's trademark is competent and probative evidence of secondary meaning. (ECF No. 62 at 19). Plaintiff argues that the proof of this bad faith is Defendant Hermans' communication with Plaintiff on September 22, 2016. (*Id.* at 20; ECF No. 62-1 at ¶¶ 121-125). This argument is unsuccessful, however, in light of Defendants' documentary evidence that Defendants chose the name MIAMIJET no later than August 2016, prior to the date Plaintiff alleges that Defendant came in contact with Plaintiff. (ECF Nos. 71-3, 71-4). Plaintiff cannot demonstrate secondary meaning by this alternative avenue.

Plaintiff has also submitted a declaration from Istvan Von Fedak. Mr. Fedak states that Plaintiff's principals approached him at a trade conference, because they were interested in purchasing a plane from him for resale to one of their customers, and they

gave him JETMIAMI promotional materials. Mr. Fedak later sent a calendar invitation to Plaintiff in which he mistakenly referred to Plaintiff as Miami Jet. (ECF No. 62-4). Notably, Plaintiff does not argue that the declaration provides an example of actual confusion. Instead, Plaintiff argues that Mr. Fedak's declaration supports Plaintiff's claim that it handed out business cards while attending the NBAA trade show. (ECF No. 62-1 at ¶¶ 53, 107). Even if the Fedak Declaration was presented as evidence of actual confusion, however, it presents only the type of short-lived confusion that Courts have held worthy of little consideration. That is, Mr. Fedak was not confused as to the source of Plaintiff's services, the calendar invite he prepared misstating Plaintiff's name was sent to the correct recipients and there is no indication that he was even aware that Miami Jet, Inc. existed as a separate entity or was confused about the relationship between Plaintiff and the Defendant corporation. Mr. Fedak's declaration evidences a fleeting mistake. *See Safeway Stores, Inc.v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982) ("Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight, while confusion of actual customers of a business is worthy of substantial weight."), abrogated on other grounds by *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018); *see, e.g. Florida Int'l University v. Florida Nat'l University, Inc*., 91 F. Supp. 3d 1265, 1282-83 (S.D. Fla. 2015) (an "incident in which a radio announcer flubbed an

advertisement for Florida National University by inadvertently calling it 'Florida International'" was type of short-lived confusion that carries little weight). [8]

The Court is cognizant that it is Defendants who have moved for summary judgment and that all inferences must be resolved in the Plaintiff's favor. But it is also true that on the specific issue of the existence of secondary meaning, the Eleventh Circuit and other courts have been clear that Plaintiff bears the burden and the burden is "high." Plaintiff has not provided sufficient evidence to meet its high burden that its tradename has established secondary meaning. The Court finds that the undisputed facts show that no reasonable jury could reasonably find that the descriptive mark JETMIAMI attained secondary meaning before Defendants began the use of their trademark. Accordingly, Plaintiff's mark is not entitled to trademark protection, and its claims against Defendants must fail.

     C.     <u>Unjust Enrichment Claim</u>

Plaintiff also asserts a state law unjust enrichment claim against the Defendants. Because the Court finds that Plaintiff's mark is not distinctive and is not entitled to trademark protection, Defendants cannot have engaged in "unauthorized and unlicensed use of Plaintiff's mark," as alleged in the Second Amended Complaint. (ECF No. 56 at ¶ 65). Therefore, Plaintiff's unjust enrichment claim also fails.

---

[8] Defendants have moved to strike the Fedak Declaration because of Plaintiff's alleged failure to timely produce it. (ECF No. 68). Because the Fedak Declaration is of minimal probative value, the Court need not reach this procedural argument.

### III.   CONCLUSION

In sum, for the reasons stated herein, the Court concludes that summary judgment should be entered in Defendants' favor on all counts.

### IV.   RECOMMENDATION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motion for Summary Judgment, (ECF No. 57). I further **RECOMMEND** that the Court **DENY AS MOOT** all other pending motions. (ECF Nos. 60, 61, 68).

### V.   OBJECTIONS

**No later than August 30, 2019,** the parties may file any written objections to this Report and Recommendation with the Honorable Darrin P. Gayles, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1 (2016).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 21st day of August, 2019.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable Darrin P. Gayles
      Counsel of record